IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRUCE COOPER and wife<br>HEIDI COOPER, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | Case No. 4:11-CV-440 |
| v. | §<br>§ | |
| WELLS FARGO BANK, N.A., | §<br>§ | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The following are pending before the court:

1. Defendant's motion for summary judgment and brief in support (docket entry #53);

2. Plaintiffs' response and brief in opposition to Defendant's motion for summary judgment (docket entry #56);

3. Defendant's reply in support of motion for summary judgment (docket entry #58);

4. Plaintiffs' sur-reply in support of their response to Defendant's motion for summary judgment (docket entry #60);

5. Plaintiffs' status report (docket entry #76);

6. Defendant's response to Plaintiffs' status report (docket entry #78); and

7. Plaintiffs' reply to Defendant's response to Plaintiffs' status report (docket entry #80).

---

1. Defendant's objections to Plaintiffs' summary judgment evidence and motion to strike (docket entry #59);

2. Plaintiffs' response to Defendant's objections to Plaintiffs' summary judgment

evidence (docket entry #63);

3. Defendant's reply in support of objections to Plaintiffs' summary judgment evidence and motion to strike (docket entry #66); and

4. Plaintiffs' sur-reply in support of Plaintiffs' response to Defendant's objections to Plaintiffs' summary judgment evidence (docket entry #70).

Having considered the Defendant's motion for summary judgment and the subsequent briefing thereto, the court finds that the motion should be granted.

### DEFENDANT'S OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE/MOTION TO STRIKE

The Defendant objected to portions of the Plaintiffs' summary judgment evidence. The court has reviewed the objectionable evidence. To the extent the court considered objectionable evidence, the court notes that the Defendant's objections to the court's consideration of such evidence speaks to the weight afforded to the same, not the admissibility. *See Encompass Office Solutions, Inc. v. Louisiana Health Service & Indemnity Co. d/b/a Bluecross Blueshield of Louisiana, and Bluecross Blueshield of Tennessee, Inc.*, No. 3:11-cv-1471-P, at 9 (N.D. Tex. Sept. 17, 2013) (Solis, J.). Further, the court reviewed the evidence provided in accordance with the appropriate summary judgment and evidentiary standards in reaching its decision. Accordingly, the Defendant's objections to portions of the Plaintiffs' summary judgment evidence are hereby **OVERRULED** and the Defendant's motion to strike is hereby **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs challenge the noticed foreclosure sale of the property located at 12712 Greenhaven Drive, Frisco, Texas 75035 ("the Property"). On June 21, 2007, Plaintiff Bruce Cooper executed a Note promising to pay $173,549.00, plus interest, to DHI Mortgage Company Ltd.

("DHI"). To secure repayment of the Note, the Plaintiffs executed a Deed of Trust which named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee for DHI, its successor and assigns. Effective August 1, 2007, Wells Fargo Bank, N.A. ("Wells Fargo") became the servicer of the loan.

Pursuant to the terms of the Deed of Trust, the Plaintiffs were required to maintain an escrow account for the payment of their taxes and hazard insurance. The Deed of Trust further provided that the Lender could waive the Plaintiffs' obligation to pay funds into the escrow account. On June 21, 2007, the Lender waived the requirement for the monthly deposit of escrow funds. The parties agreed that the Lender retained the right to establish an escrow account in accordance with the terms of the loan documents if (1) the Plaintiffs failed to timely pay their taxes or hazard insurance, or (2) the Lender advanced funds to pay for all or any portion of the Plaintiffs' taxes or hazard insurance.

In 2009, the Plaintiffs experienced financial difficulties because Plaintiff Bruce Cooper lost his job. According to the Plaintiffs, Bruce Cooper contacted Wells Fargo to explain his financial situation and was advised to complete and return a loan modification application.[1] During this unspecified time period, the Plaintiffs continued to make their monthly mortgage payments. At some time thereafter, Bruce Cooper obtained employment but was only paid commissions.

In February 2010, the Plaintiffs again contacted Wells Fargo requesting loss mitigation assistance due to financial difficulties. The loss mitigation programs available to the Plaintiffs required the establishment of an escrow account. Accordingly, Wells Fargo created an escrow account pursuant to the Plaintiffs' request for assistance. In doing so, Wells Fargo reviewed the

---

[1] The Plaintiffs do not indicate when this conversation occurred or when they completed the initial loan modification application.

status of the property taxes owed by the Plaintiffs on the Property and discovered that the Plaintiffs had not yet paid the 2009 property taxes owed on the Property. It is undisputed that the Plaintiffs were required to pay their 2009 property taxes by January 31, 2010 or a late penalty would be assessed by the taxing authority. On February 24, 2010, Wells Fargo paid the Collin County Tax Assessor and Collector $1,630.66 which included $1,523.98 for the 2009 property taxes and $106.68 for the late payment penalty fee. Wells Fargo additionally paid directly to the Frisco Independent School District $2,676.61 which included $2,501.50 for the 2009 property taxes and $175.11 for the late payment penalty fee.

Wells Fargo sent correspondence to the Plaintiffs on February 24, 2010 advising the Plaintiffs that Wells Fargo had paid their delinquent taxes and penalties.[2] On February 28, 2010, the Plaintiffs paid their property taxes directly to the taxing authorities. The Plaintiffs were subsequently notified by the taxing authorities that the taxes had already been paid.

On April 12, 2010, Wells Fargo denied the Plaintiffs' loan modification request because the Plaintiffs failed to submit all of the information necessary for Wells Fargo to complete the loan modification review. The Plaintiffs, however, dispute the reason given for the denial because the Plaintiffs aver that they submitted all of the requested information to Wells Fargo. Regardless, as a result of the Plaintiffs' request for mortgage assistance, Wells Fargo advised the Plaintiffs that the escrow account would remain active for future taxes because Wells Fargo had paid the Plaintiffs' delinquent taxes. Wells Fargo subsequently conducted an escrow analysis on the Plaintiffs' loan in April 2010. Wells Fargo sent the Plaintiffs an escrow disclosure statement and notice of new

---

[2]Although it is undisputed that the Plaintiffs received the February 24, 2010 correspondence from Wells Fargo, the parties failed to submit any evidence as to when the Plaintiffs received the letter.

mortgage payment that was dated April 20, 2010. The statement informed the Plaintiffs that their account reflected an escrow shortage in the amount of $6,990.84. The statement further notified the Plaintiffs that they had the option of paying the shortage in full which would result in a monthly mortgage payment of $1,446.72 of which $335.46 would be applied to the Plaintiffs' monthly escrow account. However, Wells Fargo offered to divide the escrow shortage over a period of 24 months which would increase the Plaintiffs' monthly loan payment by $291.29 to a total amount of $1,738.01. The Plaintiffs' new payment was scheduled to begin on July 1, 2010.

On April 22, 2010, Wells Fargo corresponded with the Plaintiffs about the option of a short sale. The Plaintiffs, however, continued to make their monthly mortgage payments.

In June 2010, the Plaintiffs requested that Wells Fargo waive the escrow requirement. Wells Fargo advised the Plaintiffs on June 30, 2010 that it could not waive the escrow requirement on their account because the Plaintiffs' escrow balance was negative.

In August 2010, the Plaintiffs began the process of refinancing their loan under the Home Affordable Refinance Program ("HARP"). On August 9, 2010, Wells Fargo informed the Plaintiffs via email that their loan appeared to be HARP eligible subject to the underwriting requirements. On August 17, 2010, Wells Fargo advised the Plaintiffs via email that it would "be able to do your loan under our HARP program . . ."; however, Wells Fargo requested additional documents from the Plaintiffs in order to complete their HARP application. Wells Fargo stated that once it received the documents from the Plaintiffs, it would forward the same to an underwriter and closings were being set 45 days from the receipt of the file.

On December 6, 2010, Wells Fargo confirmed with the Plaintiffs that it had all of the documents necessary to consider the Plaintiffs' HARP application and subsequently submitted the

Plaintiffs' loan application and documents to underwriting. The initial underwriting review revealed the necessity for additional documents which the Plaintiffs provided.

On March 10, 2011, Wells Fargo notified the Plaintiffs that it was declining the Plaintiffs' HARP application because the Plaintiffs had insufficient income for the amount of credit that they requested. The last payment Wells Fargo received for the loan was the January 2011 payment. As such, the loan went into default on February 1, 2011.

On March 13, 2011, Wells Fargo notified the Plaintiffs that their mortgage payments were past due. Wells Fargo advised the Plaintiffs that they needed to bring their account current by March 18, 2011 by submitting $3,531.58. Wells Fargo further advised the Plaintiffs that they might be eligible for one of several programs including a loan modification or short sale. On March 20, 2011, Wells Fargo sent a notice of default letter to the Plaintiffs, notifying the Plaintiffs of the delinquency on the mortgage loan and advising the Plaintiffs that failure to cure the default would lead to acceleration of the debt and loss of the Property at a foreclosure sale. Wells Fargo demanded payment in the amount of $3,587.14 on or before April 19, 2011. Thereafter, the Plaintiffs failed to make any payments to Wells Fargo. On March 31, 2011, Wells Fargo corresponded with Bruce Cooper, advising Mr. Cooper that as of March 31, 2011 the loan was not under review.[3]

---

[3] Plaintiff Bruce Cooper avers that on March 28, 2011, he spoke with a Wells Fargo representative via telephone. During that telephone conversation, Mr. Cooper avers that the representative advised him that he could apply for a loan modification or do a short sale. The Plaintiff initially avers that in response to the representative's suggestion to start the loan modification process, the Plaintiff submitted all of the requested financial information again for the loan modification. The Plaintiff later avers, however, that since he and his wife had already applied for and submitted documents for a loan modification, the Wells Fargo representative agreed to cancel the foreclosure sale. The Plaintiff's averments, however, are self-serving. According to the letter dated March 31, 2011, Wells Fargo advised Mr. Cooper that his loan was not in review and his monthly mortgage payment for February 2011 was past due. The letter further advised Mr. Cooper that foreclosure proceedings had not yet been initiated on the loan. The letter also advised that Wells Fargo was refunding $395.00 to Mr. Cooper for the cost of the appraisal that was required for the HARP application.

Wells Fargo subsequently retained the law firm of Barrett Daffin Frappier Turner & Engel, L.L.P. (the "Law Firm") to conduct the foreclosure proceedings. On May 27, 2011, the Law Firm sent the Plaintiffs a letter notifying them that the debt had been accelerated and a foreclosure sale was scheduled for July 5, 2011. The Plaintiffs remain in possession of the Property. The Plaintiffs have not made a loan payment since January 2011.

The Plaintiffs originally filed suit in Collin County, Texas to stop the foreclosure sale. The Defendant removed the case to this court on July 13, 2011. In the Plaintiffs' second amended complaint – the live pleading in this action – the Plaintiffs assert the following claims against the Defendants: (1) breach of contract and anticipatory breach of contract; (2) breach of common law tort of unreasonable collection efforts; (3) malice; (4) violation of the Texas Debt Collection Practices Act, Texas Finance Code §§ 392.001, *et seq.*; and (5) negligent misrepresentation. The Plaintiffs also seek a declaratory judgment and an accounting of all transactions on their mortgage loan. The Defendant subsequently moved for summary judgment on all of the Plaintiffs' claims.

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations

omitted). The substantive law identifies which facts are material. *See id*. at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof. The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 248. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

### DISCUSSION AND ANALYSIS

**Preemption by the National Bank Act and Private Right of Action under HARP**

The Defendant initially argues that the Plaintiffs' claims are preempted by the National Bank Act, 12 U.S.C. §§ 21 *et seq*. ("NBA"). "Because the court concludes that dismissal of [the Plaintiffs'] claims is warranted on other grounds, it need not decide the preemption issue." *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 809 (N.D. Tex. 2012).

Additionally, the Defendant argues that no private right of action exists under HARP. The Defendant contends that HARP and the Home Affordable Modification Program ("HAMP") are sister programs within the Making Home Affordable ("MHA") program. The Defendant reasons that since no private right of action exists under HAMP, no private right of action exists under HARP as well. While the Plaintiffs (1) cannot attempt to enforce the Defendant's contracts to participate

in the MHA or HAMP (or, presumably, HARP) programs, and (2) cannot assert HAMP (or, presumably, HARP) violations as the basis for their claims, "the court must consider whether the conduct and facts alleged in the pleadings could state a claim for relief under Texas law." *Massey v. JPMorgan Chase Bank, N.A.*, 2012 WL 3743493, *4 (N.D. Tex. 2012). The court shall address each of the Plaintiffs' claims in turn. *See id.*

**Plaintiffs' Breach of Contract Claims**

To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. denied) (mem. op.); *see also Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Here, the "Plaintiffs' whole complaint is that they would have taken measures to prevent the foreclosure sale, but for Wells Fargo's promises that no foreclosure sale would be conducted and that they qualified for a loan modification."[4] PL. RESP. TO MTN. FOR SUMM. JUDG., p. 13.

The Plaintiffs argue that the August 17, 2010 email constituted an enforceable contract to refinance their loan under HARP. The August 17, 2010 email advised the Plaintiffs that Wells Fargo would "be able to do your loan under our HARP program . . ."; however, Wells Fargo requested additional documents from the Plaintiffs in order to complete their HARP application. Wells Fargo stated that once it received the documents from the Plaintiffs, it would forward the same to an underwriter and closings were being set 45 days from the receipt of the file. While the court

---

[4]The Plaintiffs interchange "modification" with "refinance" throughout their briefing. In accord with their briefing and averments, the court presumes that the Plaintiffs mean that Wells Fargo led the Plaintiffs to believe that they qualified for refinancing under HARP.

acknowledges that the email could have led the Plaintiffs to believe that a refinance under HARP could have been forthcoming, the email is not sufficient to create an enforceable contract. The email requests additional documents that still needed to be reviewed by underwriting. Additionally, the email makes no mention of any essential terms of a HARP loan refinance, like the principal amount, the interest rate or closing costs. "In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) (citation omitted). "'The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a contract unless the terms of that contract are reasonably certain.'" *Id.*, quoting *Texas Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 830 (Tex. App. – Houston [14th Dist.] 1994) (citing RESTATEMENT (SECOND) OF CONTRACTS § 33(1) (1981)), *rev'd on other grounds*, 958 S.W.2d 178 (Tex. 1997). "But an agreement to make a future contract is enforceable only if it is 'specific as to all essential terms, and no terms of the proposed agreement may be left to future negotiations.'" *Id.*, quoting *Foster v. Wagner*, 343 S.W.2d 914, 920-21 (Tex. Civ. App. – El Paso 1961, *writ ref'd n.r.e.*) (remaining citations omitted). "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Id.* (citations omitted). Here, the August 17, 2010 email communication fails to constitute an enforceable contract because it is indefinite with respect to any material terms. The crux of the Plaintiffs' breach of contract allegation is based on the premise that the August 17, 2010 email created an enforceable contract; however, since the court finds that the August 17, 2010 email did not create an enforceable contract, the Plaintiffs' breach of contract claim fails because the Plaintiffs did not provide summary judgment

evidence to the court concerning the existence of a valid contract. Based on the foregoing, the Defendant's motion for summary judgment on the Plaintiffs' breach of contract claims is hereby **GRANTED**.[5]

**Plaintiffs' Anticipatory Breach of Contract Claim**

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance." *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). To establish a claim for anticipatory breach of contract, a plaintiff must show: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010). But "the declaration of intent to abandon must be in positive and unconditional terms." *Preston v. Love*, 240 S.W.2d 486, 487 (Tex. Civ. App.—Austin 1951, no writ). The only contract in existence in this case was the one created by the Note and Deed of Trust. The Plaintiffs have put forth no evidence that the Defendant repudiated its obligations under the Note and Deed of Trust so there is no genuine issue of material

---

[5]In their second amended complaint, the Plaintiffs briefly state in their breach of contract cause of action that "the acceleration and foreclosure were improper because Plaintiffs were in [sic] not in default until WF paid Plaintiffs' property taxes, even though Plaintiffs paid them, and then opened an escrow account and charged Plaintiffs late fees and interest." PL. SEC. AMD. COMPL., p. 11, ¶ 24. The Defendant engaged in an extensive analysis, explaining that the Plaintiffs' tax allegations do not provide a basis for their breach of contract claims. In their brief response, the Plaintiffs cited no authority in support of their argument. Accordingly, the court concludes that the Plaintiffs waived any argument regarding this issue and abandoned the same. *See United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

fact on this claim, and the Defendant's motion for summary judgment on the Plaintiffs' anticipatory breach of contract claim is **GRANTED**.

**Plaintiffs' Unreasonable Collection Efforts Claim**

Under Texas law, "(u)nreasonable collection is an intentional tort." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.*; *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009). Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011). The standard for showing unreasonable collection efforts requires intent, not mere negligence. *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010); *see also Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (noting the *Lathram* standard "has largely been disavowed by Texas courts"); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) ("[E]vidence of negligence is insufficient to support a cause of action for unreasonable collection efforts.").

The Plaintiffs argue that the Defendant's actions were unreasonable. Specifically, the Plaintiffs assert that the Defendant led the Plaintiffs to believe that they qualified for refinancing under HARP. The Plaintiffs contend that said actions were malicious and wanton. The Plaintiffs, however, have offered no summary judgment evidence that the Defendant's actions amounted to a course of harassment that was willful, wanton, malicious, or intended to inflict mental anguish and

bodily harm. Therefore, the Defendant's motion for summary judgment on this claim is **GRANTED**.

**Plaintiffs' Texas Finance Code/Texas Debt Collections Act Claims**

The Plaintiffs allege that the Defendant violated §§ 392.301(a)(8), 392.303(a)(2), 392.302(4), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code, all portions of the Texas Debt Collections Act ("TDCA"). In support of their TDCA claims, the Plaintiffs argue that the Defendant wrongfully denied their HARP refinance application and wrongfully paid their 2009 property taxes. The court will address each section in turn.

    1.       **Section 392.301(a)(8)**

Section 392.301(a)(8) of the TDCA prohibits debt collectors,[6] in debt collection,[7] from using threats, coercion, or attempts to coerce that threaten to take an action prohibited by law. The Plaintiffs argue that the Defendant violated this section by moving to foreclose on the Property without complying with the terms of the Deed of Trust. Section 392.301(b)(3), however, specifically excludes the exercise of a "statutory or contractual right of seizure, repossession or sale that does not require court proceedings" from its provisions, *see* TEX. FIN. CODE § 392.301(b)(3). The Plaintiffs further argue that the Defendant coerced them into taking no action to prevent the foreclosure sale by telling the Plaintiffs that they qualified for refinancing under HARP. The Plaintiffs, however, have cited to no summary judgment evidence to support their claims that the Defendant threatened

---

[6] A debt collector is "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6).

[7] Debt collection is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." TEX. FIN. CODE §392.001(5). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001(2).

-13-

to take an action they could not legally take. Therefore, summary judgment is **GRANTED** for the Defendant with respect to the Plaintiffs' claims under § 392.301(a)(8).

2.  **Section 392.303(a)(2)**

Section 392.303(a)(2) of the Texas Finance Code prohibits a debt collector from using unfair or unconscionable means in collecting or attempting to collect interest or charges not authorized by the Note, Deed of Trust or applicable law. The Plaintiffs base this claim on their contention that the Defendant imposed wrongful charges when it paid the Plaintiffs' 2009 property taxes and created an escrow account. However, the parties agreed that the Lender retained the right to establish an escrow account in accordance with the terms of the loan documents if (1) the Plaintiffs failed to timely pay their taxes or hazard insurance, or (2) the Lender advanced funds to pay for all or any portion of the Plaintiffs' taxes or hazard insurance. Because the Plaintiffs failed to cite to any evidence that would create a fact issue that they were charged fees not authorized by the mortgage documents or applicable law, summary judgment is **GRANTED** for the Defendant as to the Plaintiffs' claims under § 392.303(a)(2).

3.  **Sections 392.304(a)(8) and 392.304(a)(19)**

The TDCA prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt." TEX. FIN. CODE § 392.304(a)(8). The TDCA also prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* at § 392.304(a)(19). A statement is a misrepresentation if the defendant made "a false or misleading assertion." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010). The TDCA applies to foreclosure actions because "foreclosure actions inevitably involve a debt

collection aspect." *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730-732 (N.D. Tex. 2011). However, "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt." *Watson v. Citimortgage*, No. 4:10-cv-707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012).

The Plaintiffs argue that the Defendant misrepresented that the Plaintiffs were approved for a HARP refinance. As discussed above, the court has rejected the Plaintiffs' argument. Further, because the Plaintiffs failed to cite to any evidence that would create a fact issue that the Defendant made fraudulent, deceptive or misleading representations about the character, extent or amount of the Plaintiffs' debt, summary judgment is **GRANTED** for the Defendant with respect to the Plaintiffs' claims under §§ 392.304(a)(8) and 392.304(a)(19).[8]

**Plaintiffs' Negligent Misrepresentation Claim**

Under Texas law, a claimant alleging negligent misrepresentation must show the following:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Biggers*, 767 F. Supp. 2d at 734. "[T]he misrepresentation at issue must be one of existing fact" rather than a promise of future conduct. *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL 1630193, at *7 (E.D. Tex. Mar. 20, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011). Representations with regard to future loan modifications and foreclosure (or forbearance from

---

[8]In their second amended complaint, the Plaintiffs alleged that the Defendant violated §§ 392.302(4) and 392.101 of the Texas Finance Code. The Defendant moved for summary judgment on these claims. The Plaintiffs filed no response. Accordingly, the court concludes that the Plaintiffs waived any argument regarding these issues and abandoned the same. *See United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

foreclosure) "constitute promises of future action rather than representations of existing fact" and cannot support a negligent misrepresentation claim. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (internal quotation marks and citations omitted).

The Plaintiffs contend that the Defendant misrepresented that they qualified for a HARP refinance. However, as already discussed, Wells Fargo represented to the Plaintiffs that they were eligible for a HARP refinance subject to underwriting. Since the alleged representation constitutes a promise of future action, the Plaintiffs' negligent misrepresentation claim fails as a matter of law. Accordingly, the Defendant's motion for summary judgment on the Plaintiffs' negligent misrepresentation claim is **GRANTED**.

**Plaintiffs' Malice, Declaratory Judgment and Accounting Claims**

The Plaintiffs seek the remedies of a declaratory judgment, damages for malice, and an accounting. Because the court has granted summary judgment for the Defendant on all of the Plaintiffs' claims, the Plaintiffs are not entitled to any damages or equitable remedies.

### Conclusion

Based on the foregoing, the Defendant's motion for summary judgment (docket entry #53) is hereby **GRANTED**. The Defendant's objections to Plaintiffs' summary judgment evidence and motion to strike (docket entry #59) is **DENIED**. The Plaintiffs' motion for oral argument on the motion for summary judgment (docket entry #90) is **DENIED**. Finally, the hearing on the Plaintiffs' application for injunction scheduled for Wednesday, July 23, 2014 at 1:30 p.m. is **CANCELLED**.

IT IS SO ORDERED.

**SIGNED this the 22nd day of July, 2014.**

-16-

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE